ROGERS v. The RIVAL. See Case No. 11,-867.

---

## Case No. 12,020.

### ROGERS et al. v. SARGENT et al.

[7 Blatchf. 507.] [1]

Circuit Court, S. D. New York. Sept. 13, 1870.

PATENTS—WIRE STAPLE—CLAIM—SPECIFICATIONS.

1. The claim of the reissued letters patent granted to Byron Boardman, March 6th, 1866, for an "improved wire staple," on the surrender of the original patent granted to him, as inventor, March 30th, 1858, which claims, "as a new manufacture or commodity," "a wire staple, adapted for use in making window-blinds or screens, and constructed substantially as above described," is valid.

2. The words. "constructed substantially as above described," in the claim, do not refer solely to a staple so constructed, with transverse corrugations, as to penetrate wood easily and be withdrawn therefrom with difficulty, but to a staple made into such shape by the action of dies, which form the corrugations by swaging.

3. The invention covered by the claim does not embrace merely a staple reduced in size, so as to be adapted to window-blinds, spikes with transverse corrugations, and in shape like such staple, having existed before, but involves the idea that such staple shall be made by the swaging blow of a pair of dies, it appearing that such staple could not be made by hand at a price which would admit of its profitable manufacture, that the sale of it made by dies by machinery has been very great, and that it has altogether superseded the non-serrated staples before used for blinds.

[Distinguished in Double-Pointed Tack Co. v. Two Rivers Manuf'g Co., 3 Fed. 33–35.]

4. Such claim covers a staple which has indentations of equal depths over the whole surface indented, and is not made with tapering points, and also covers a staple that has the shallowest indentations towards or nearest the points and the deepest indentations farthest from the points.

This was a final hearing, on pleadings and proofs, in a suit in equity, brought by the plaintiffs, [C. B. Rogers & Co.,] a Connecticut corporation, [against George H. Sargent and others,] founded on the alleged infringement of reissued letters patent, granted to Byron Boardman, March 6th, 1866 [No. 2,183], for an "improved wire staple." The original patent was granted to Boardman, as inventor, March 30th, 1858 [No. 19,747].

Charles M. Keller and Charles F. Blake, for plaintiffs.

Stephen D. Law, for defendants.

BLATCHFORD, District Judge. The specification of the reissued patent states the invention to be an "improved wire staple, for connecting blind slats to the rods which

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

guide and govern their positions." It says: "The nature of my invention consists in the production of a vendible article, of a new and highly convenient and useful shape. I propose to form the staples by which the slats of window-blinds are attached to the rods which move and control them, of such a shape, that, while they can be readily inserted into the wood, they cannot easily be withdrawn—of such a shape, also, that they can be readily and rapidly made by machinery, so that they can be produced in great quantities, and kept for sale in the market as an article of merchandise." The specification states, that the staples are prepared by being bent into the shape of the letter U; that they are, ordinarily, from three-eighths to five-eighths of an inch in length, with an opening between the two branches of about three-sixteenths of an inch; and that they are usually made of wire of No. 18 to 20 wire gauge. It adds: "These staples, after being prepared as shown in Fig. 2, are subjected to the action of dies with serrated ridges, to produce corresponding indentations in the staples, and so shaped and arranged as to press harder, or come nearer in contact, as they approach the points a, c, than at a distance therefrom. By this means, the impressions are deeper towards the piercing point, and the wire is spread and made to taper in thickness towards that point." The patentee states, that he prefers bevelling the points before using the dies, and that the action of the dies will cause the bevelled extremities to assume a central position, and will give a rounded edge in the other direction. The object of the bevelling he states to be to produce sharper points, to facilitate their insertion into the wood.

He adds: "The transverse indentations should slant, or be bevelled, in such directions as will favor their being driven into the wood, or other substance, in which they

[Drawings of reissued letters patent No. 2.-183, granted March 6, 1866, to B. Boardman. Published from the records of the United States patent office.]

are driven, and prevent them from being easily withdrawn. I generally make the indentations square across the wire, as shown in the drawings, but this is not indispensable, as they may be made to form an acute or obtuse angle with the wire, without essentially impairing their general utility. Some of the advantages over the ordinary staples formerly in use, which are secured by thus pointing and swaging them with transverse grooves, as herein described, are: First. They may be made shorter than the ordinary staples which are not clenched, and hence will allow of a much smaller rod, as they will sustain from three to four times as much strain, without being drawn out. Second. They will also dispense with the necessity of being clenched, and will hold in the rod equally as well as that variety called the fish-back staple, while the rod is not bruised or defaced, as is the case when the staple is clenched. Third. They will hold as well in the slat, where clenching is impracticable, as in the rod, and will not be liable to be drawn out by turning the slats. Finally. They may be driven without previously piercing the rod or slat, as the peculiar form of the points enables them to part the grain of the wood, and enter without breaking the fibre, which, as the staple is driven, closes into their indentations, and holds the staple firmly imbedded in the wood. It is easy to contrive machinery that shall accomplish the purposes above-mentioned, without the exercise of any inventive ingenuity, and, as I make no claim to any such machinery, it has not been thought necessary to describe the construction or operation of any such machinery. I am aware that Ballard's patent of 1841 shows a spike constructed with transverse corrugations, made substantially like those proposed by me, so that, while it will penetrate wood without much increased resistance, it cannot be withdrawn without great difficulty. I do not lay claim to the discovery of any new principle, nor do I seek to patent such principle. But what I do claim as new, and desire to secure by letters patent, as a new manufacture or commodity, is—a wire staple, adapted for use in making window-blinds or screens, and constructed substantially as above described."

The proceedings before the patent office, on the original granting, as well as on the reissue, of this patent, are in evidence in the case. A comparison of the specification of the original patent with the specification of the reissue fails to detect any substantial difference between the descriptive parts of the two. The original specification does not contain the statement that the new staple can be readily and rapidly made by machinery, so as to be produced in great quantities, and kept for sale in the market as an article of merchandise. But, the claim of the original patent was in these words: "Constructing wire staples, (such as are used for connecting

the semi-revolving slats of window-blinds and screens to a rod governing their positions,) by giving them a rounded edge in the direction as shown at a, c, Fig. 1, and an acute or sharp edge, as viewed crosswise, at f, h, in combination with transverse indentations across the wire, the whole being formed by compression between dies, substantially as described." It appears that this claim was granted by the patent office solely on the ground that, although spikes, bolts and staples, furrowed or barbed, for the purpose of holding with greater force when driven into wood, were old, yet the patentee's staple was to be regarded as new when formed by compression between dies; and that it was granted as a claim to a staple, the shanks of which were to have a rounded edge in the direction of their width, a sharpened edge in the direction of their thickness, and transverse indentations, when those three qualities were produced by compression between dies, as contradistinguished from forging the points and cutting the barbs by a chisel. This difference, leading to the production of the article at a cheaper rate by the new method, was regarded by the patent office as a patentable difference warranting the granting of the claim.

The object sought to be attained by the reissue was, evidently, to patent the staple as a new manufacture. The reissued specification states, that the patentee desires to obtain for the staple a patent as for a new manufacture; that his invention consists in the production of a vendible article; and that its shape is to be such that it can be readily and rapidly made by machinery, so that it can be produced in great quantities, and kept for sale in the market as an article of merchandise. These suggestions are not found in the original specification. So, too, the claim of the reissue states, that the patentee claims, "as a new manufacture or commodity," "a wire staple, adapted for use in making window-blinds or screens, and constructed substantially as above described." It is as such new manufacture or commodity, that the staple adapted for such use, and constructed substantially as described, must be held, under the claim, to be a patentable invention, if the claim is to be upheld at all.

The defence is taken in the answer, that it is not a patentable invention to manufacture of a reduced size, and adapted for the use mentioned in the claim, staples with corrugated or indented ends and tapering points, in view of the prior existence (as admitted in the specification) of spikes constructed with transverse corrugations made substantially like those proposed by the patentee, so as to penetrate wood without much increased resistance and not be capable of being withdrawn without great difficulty. To this defence it is replied, that the barbing on the prior spikes was not produced by dies, but by a cutting instrument, and was not produced by machinery; that the prior staples, after being bent, were first drawn out and were then barbed by a cutting instrument; and that the patented staple, after being bent, is made by one swaging blow of a pair of dies. It is contended, that, in view of the great numbers of the patented staples that are used, and of the fact that they are far superior to smooth legged staples, the peculiarity of their being corrugated by dies, which makes it easy to form them by machinery, is an important peculiarity, and constitutes a substantial difference between the old and the new staple, amounting to a patentable novelty. The evidence shows, that the patented staple could not be made by hand at a price which would admit of its profitable manufacture, that the sale of it, made by dies by machinery has been very great, and that it has altogether superseded the non-serrated staple before used for blinds. In view of these facts, I think the reissued patent is valid and the claim sustainable in law. The words, "constructed substantially as above described," in the claim, cannot be regarded as having reference solely to the construction of the staple into a staple with transverse corrugations, and so formed as to penetrate wood easily and be withdrawn therefrom with difficulty. If those words were to be so construed, the patentee would be made to claim the spike of Ballard adapted for use in a window-blind, that is, merely reduced in size so as to be small enough for use in a blind. But those words must, in view of the whole specification, have a broader interpretation. They mean, not only staples of such a shape that they can readily be inserted into wood and with difficulty be withdrawn from it, but staples made into such shape by the action of dies, which form the corrugations by swaging. To this idea of the use of dies, enabling the article to be made by machinery, is to be attributed the utility and success of the invention. This use of dies to make the corrugations, and not merely the reduction in size of the spike, forms part of the adaptation of the spike for use in blinds, and the article, when so made by dies, is a new commodity or article of manufacture. The claim must be construed in connection with the entire specification and in view of the state of the art at the time. The invention is a valuable one, and the patent ought to be so construed as to be sustained, if possible. It can be sustained without doing violence to any settled principle of law.

It is claimed, on the part of the defendants, that the plaintiff's patent does not cover a staple that does not have its indentations or corrugations deeper towards the piercing points than farther therefrom, and does not taper in thickness towards the point; that it does not cover a staple that has indentations of equal depths over the whole surface indented, and is not made with tapering points; and that it does not cover a staple that has the shallowest indentations towards or near-

est the points, and the deepest indentations farthest from the points. These positions are unsound. The depth of the corrugations and the degree of taper towards the point are not matters of substance. Ease of penetration in connection with difficulty of withdrawal, and the presence of transverse corrugations formed by dies, when the staple is of such size and shape as to be adapted for use in making blinds, are the substantial features of the patented staple. Under this view, there is no doubt that the defendants have infringed the patent sued on.

There must be the usual decree for an injunction and an account of profits, as prayed for.